UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VISTEON CORPORATION | ) | |
| VISTEON SYSTEMS, LLC and | ) | |
| LOUIS HEEB, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-0200-RLY-TAB |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA, and | ) | |
| UNITED STATES FIDELITY | ) | |
| & GUARANTY CO., | ) | |
| Defendants. | | |

**REPORT AND RECOMMENDATION
ON PARTIAL MOTIONS FOR SUMMARY JUDGMENT**

**I.      Introduction**

This insurance dispute arises from soil and groundwater contamination at Plaintiffs

Visteon Corporation's and Visteon LLC's ("Visteon") Connersville, Indiana plant.

In 2001 and 2002, solvents including trichloroethene ("TCE") were allegedly discovered at

Visteon's Connersville plant and in the surrounding area.  [Docket No. 89 at 5.]  Visteon

contends that it has incurred millions of dollars in damages due to governmental demands to

address environmental concerns.  Additionally, Plaintiff Louis Heeb, a neighboring landowner,

seeks damages from Visteon for negligence, nuisance, and for a variety of related claims.

From 2000 to 2002, Visteon was insured by Defendants National Union Fire Insurance

Company of Pittsburgh ("National Union") and United States Fidelity & Guaranty Company

("USFG").  Defendants denied Visteon insurance coverage pursuant to the pollution exclusion

provisions contained in those insurance policies.  However, Visteon and Heeb contend that the

pollution exclusion provisions are unenforceable under Indiana law.[1]  Conversely, Defendants

contend that Michigan law applies and therefore the pollution exclusions are enforceable.  For

the purposes of the parties' partial motions for summary judgment, the limited question before

the Court is whether Indiana or Michigan law applies.  For the reasons below, the Magistrate

Judge concludes that Michigan law should be applied and that partial summary judgment on the

choice of law issue should be granted in favor of Defendants.

## II.     Discussion

Before engaging in a choice of law analysis, the Court must determine whether a relevant

conflict exists between Indiana and Michigan law.  *In re Griffin Trading Co.*, 683 F.3d 819, 824

(7th Cir. 2012).  As the parties note, there is a meaningful difference between the validity of a

pollution exclusion provision under Indiana and Michigan law.  *Compare State Auto. Mut. Ins.*

*Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848–52 (Ind. 2012) (concluding that the standard pollution

exclusion clause was ambiguous and unenforceable), *with City of Grosse Pointe Park v. Mich.*

*Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 116 (Mich. 2005) (concluding that a standard

pollution exclusion provision was unambiguous and enforceable).  Therefore, a choice of law

inquiry is necessary.

"A district court sitting in diversity must apply the choice of law principles of the forum

state (in this case Indiana) to determine which state's substantive law governs the proceeding."

*West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).  Indiana

---

[1]Heeb filed a concurrence and joinder to Visteon's motion for partial summary judgment.
[Docket No. 145.]

uses the "most intimate contact" test as set forth in the Restatement (Second) of Conflict of Laws §§ 188 and 193 to determine the applicable law. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). This test "looks for the state with the 'most significant relationship to the transaction and the parties' and, in determining that relationship, considers certain contacts: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* If the principal location of the insured risk—or in the terms of § 188, the location of the subject matter of the contract—can be determined, it is given more weight than the other factors. *Id.* at 816. If no such location exists, the Court turns its attention to the other factors provided in § 188. *Id.*

  A. *Principal Location*

  The principal location of the insured risk is "the state having more insured sites than any other." *Standard Fusee*, 940 N.E.2d at 816. "This is so because as the number of sites increase, so does the risk of an occurrence." *Am. Employers Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1181 (Ind. Ct. App. 2005). Plaintiffs contend that the principal location of the risk is indeterminable because Visteon is a global entity and during the insured period had fourteen sites in Mexico, fourteen in Michigan, three in Indiana, three in Canada, and two or less in other states and countries. [Docket No. 89 at 8–10.] Additionally, Plaintiffs contend that the principal location is also indeterminable because the USFG policies are merely a "fronting" agreement that involves no risk. The Magistrate Judge disagrees with Plaintiffs' arguments and concludes that the principal location of risk is Michigan.

1.      *Global and Domestic Risk*

Plaintiffs contend that the principal location of the insured risk is indeterminate because Visteon's operations were spread out all over the world during the insured period.  [Docket No. 89 at 14.]  The parties do not cite to any Indiana case dealing with the principal location of risk for a global entity, but Plaintiffs cite two Third Circuit cases that conclude the weight of the principal location factor is greatly diminished when an insurance policy covers risks at a global level.  *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007); *Compagnie des Bauxites de Guinee v. Argonaut-Mw. Ins. Co.*, 880 F.2d 685, 890 (3d Cir. 1989); *see also NRC Corp. v. Transport Ins. Co.*, 344 Wis.2d 494, 505 (Wis. Ct. App. 2012) (concluding in a river contamination case that when a global corporation with operations in numerous states and abroad is at issue "no state can be viewed as the principal location of the insured risk.").

The Court, however, need not determine whether the principal location factor is indeterminable or carries less weight for global entities because the policies in this case insure global and domestic risks separately.  [*See* Docket No. 138 at 12.]  National Union's policies with Visteon distinguish between foreign and domestic coverage, and have varying retained limits.  [Docket No. 95-6 at 22; Docket No. 95-7 at 20.]  The types of coverage contained in the policies include: comprehensive general liability, products and completed operations, auto liability, employers' liability, marine liability, foreign general liability, foreign products and completed operations liability, and foreign employers' liability.  [Docket No. 95-6 at 22; Docket No. 95-7 at 20.]  Additionally, USFG's policies with Visteon define "coverage territory" as the "fifty (50) states of the United States of America and the District of Columbia."  [Docket No. 107-4 at 38.]  Accordingly, the Court need not consider foreign sites in its principal location

4

inquiry because the policies insure global risks separately from domestic risks.[2]

Within the United States, Plaintiffs have fourteen sites in Michigan, three sites in Indiana, two sites in Missouri, and no more than one site in other states.  [Docket No. 89 at 8–10.]  Thus, Michigan is the state with the most insured sites and therefore the principal location of risk.  *See Standard Fusee*, 940 N.E.2d at 816 ("[T]he principal location of the insured risk was found to be the state having more insured sites than any other."); *Coachmen*, 838 N.E.2d at 1181 ("[W]hile Coachmen's risks were scattered throughout the country because of its numerous subsidiaries, Indiana is the principal location of the insured risk because Indiana is, and has always been, the state with the largest number of insured sites."); *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1025 (Ind. Ct. App. 1999) ("[A]lthough there was potential liability in both Indiana and New York, Indiana was the location of more sites."); *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 933 (Ind. Ct. App. 1999) (concluding that Indiana is the state with the most contacts because four out of the seven sites were located in Indiana); *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 294 (Ind. Ct. App. 1997) ("Although Dana's sites are scattered to a degree, they are nonetheless principally located in Indiana.").

Plaintiffs suggest that because the Connersville site was the largest user of TCE, Indiana is the principal location of risk.  However, the risks insured under the policies are not limited to TCE usage but include an array of risks under general categories of coverage.  As discussed, these covered risks include comprehensive general liability, products and completed operations,

---

[2]Even if the Magistrate Judge were to account for Visteon's foreign operations, the majority of Visteon's overall operations were still located in Michigan despite Mexico having the same number of sites.  [Docket No. 155 at 7–8.]

auto liability, employers' liability, marine liability, foreign general liability, foreign products and completed operations liability, and foreign employers' liability.  [Docket No. 95-6 at 22; Docket No. 95-7 at 20.]  Focusing on a specific type of risk after it occurs fails to account for the other contemplated risks and ignores the basic premise that "as the number of sites increase, so does the risk of an occurrence."  *Coachmen Indus*, 838 N.E.2d at 1181; *see also Ill. Nat'l Ins. Co. v. Temian*, 779 F. Supp. 2d 921, 925 (N.D. Ind. 2011) ("The Browns argue that . . . Indiana has the most significant contact with the collision that is the subject matter of the cause of action, and that therefore Indiana law applies.  However, the instant Motion seeks the Court's interpretation of Plaintiff's insurance obligations on a contractual agreement.").  Accordingly, because Michigan has the most sites, it is the principal location of the insured risk.  The Court gives this factor greater weight than the other factors.  *Standard Fusee*, 940 N.E.2d at 816.

       2.     *Fronting Agreements and Risk*

Plaintiffs assert that USFG's policies are merely "fronting" policies that assume no risk and make no promise to indemnify or defend and therefore there is no principal location of risk. [Docket No. 139 at 2.]  The Magistrate Judge disagrees.  The typical fronting policy is an insurance agreement where the insured company purchases insurance but agrees to administer and reimburse the insurer for all claims, which is usually accomplished by indemnification provisions or by making the deductible equal to the policy limits.  *Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guarantee Co.*, 668 F.3d 991, 994 n.2 (8th Cir. 2012); *Reliance Ins. Co. v. Shriver, Inc.*, 224 F.3d 641, 643 (7th Cir. 2000).

The primary reason companies enter into fronting policies—as opposed to simply resolving all claims on their own without any connection to an insurance company—is to satisfy

financial responsibility laws, which aim to protect third parties in the event the insured becomes insolvent. *Am. Guarantee*, 668 F.3d at 994 n.2 ("A fronting policy protects the public in the event the self-insured entity becomes insolvent."); *St. Paul Fire & Marine Ins. Co. v. Temple Univ. Hosp.*, 57 Fed. App'x 128, 130 n.1 (3d Cir. 2003) (unpublished) (same). Thus, while this type of policy closely resembles self-insurance, it is not a pure form of self-insurance whereby the fronting insurer averts all possible risk. *Weyerhaeuser v. Fireman's Fund Ins. Co.*, No. C-06-1189-MJP, 2007 WL 4420938, at *2–3 (W.D. Wash. Dec. 17, 2007) ("Like the policies in *Croft*, the fronting policies here do involve a transfer of risk from the insured to the insurer—the risk that, should the insured become insolvent, the insurer will provide coverage for certain types of claims."); *Croft v. Old Republic Ins. Co.*, 618 S.E.2d 909, 915 (S.C. 2005) (same); Mark W. Flory & Angela Lui Walsh, *Know Thy Self–Insurance (And Thy Primary and Excess Insurance)*, 36 TORT & INS. L.J. 1005, 1006–07 (2001) (same).

Although "[s]ome commentators and jurists have suggested that fronting policies involve no risk transfer" *Weyerhaeuser*, 2007 WL 4420938, at *2, this conclusion is based on the premise that the insurer does not intend to bear any risk and the risk of loss is transferred back to the insured. *See Corwin v. DaimlerChrysler Ins. Co.*, 819 N.W.2d 68, 72 n.3 (Mich. Ct. App. 2012). While it may be the intention of the parties for the insured to bear all the risk, the reality is that the insured may become insolvent leaving the insurer to bear some or all of the risk. *See Am. Guarantee*, 668 F.3d at 994 n.2; *Temple*, 57 Fed. App'x 128, 130 n.1; *Weyerhaeuser*, 2007 WL 4420938, at *2; *Croft*, 618 S.E.2d at 915. Where the claims at issue involve millions of dollars—as is the case here—the risk in the event of insolvency increases.

Despite the significantly minimized risk associated with fronting policies, the location of

the reduced risk is still the same.  Accordingly, characterizing the USFG policy as a fronting

agreement does not alter the conclusion that Michigan is the principal location of the risk.

      B.     *Place of Performance*

The place of performance is "the location where the insurance funds will be put to use."

*Standard Fusee*, 940 N.E.2d at 817.  There is no dispute that the insurance funds would be put to

use in Indiana.[3]  The parties, however, dispute whether this factor is controlling.  Citing *Reliance*

*Insurance Co. of Illinois v. Raybestos Products Co.*, No. 97-0027-C, 2000 U.S. Dist. LEXIS

23137, at *18–19 (S.D. Ind. Jan. 19, 2000), Plaintiffs argue that "where the contract contains no

choice of law provision, the parties are from different states, and the parties have negotiated

without meeting in person—the place of performance is usually given controlling weight."

However, *Raybestos* also recognizes that the validity of an insurance agreement is "determined

by the local law of the state which the parties understood was to be the principal location of the

insured risk during the term of the policy."  *Id.* at *19.  Therefore, the court concluded that

"[b]ecause the location of the insured risk is entirely in Indiana, and because the contract did not

provide otherwise, the parties are presumed to have contemplated that Indiana law provides the

rules of decision in this case."  *Id.* at *18–19.

     *Raybestos*' reliance on the principal location factor is confirmed by *Standard Fusee*,

which holds that the principal location factor is given controlling weight.  940 N.E.2d at 815.

("If the principal location of the insured risk can be determined, it is given more weight than

other factors.").  As discussed above, the principal location can be determined and that location

is Michigan.  Moreover, the place of performance bears little weight when at the time of

---

[3]This factor sufficiently accounts for Heeb's interest in this case.

contracting the place of performance is either uncertain or unknown. *Coachmen*, 838 N.E.2d at 1180. The record only suggests that Defendants were aware that TCE use in Indiana was one of numerous possible risks in a multitude of states. [*See* Docket No. 89 at 6.] But there is no evidence that Defendants knew about the TCE contamination in Indiana at the time of contracting. [*See id.*] Thus, while this factor weighs in favor of Indiana, the Magistrate Judge does not give this factor controlling weight.

>        C.        *Place of Contracting*

"Under Indiana law, [a] contract is deemed to have been made in the state where the last act necessary to make it a binding agreement takes place." *Standard Fusee*, 940 N.E.2d at 817 n.6 (internal quotation marks omitted). "Standing alone, the place of contracting is a relatively insignificant contact." Restatement (Second) of Conflict of Laws § 188 cmt. e.

The parties rely on a variety of different contacts to determine the place of contracting. Plaintiffs look to the place where the policies were underwritten and where the premiums were received. [Docket No. 138 at 17; Docket No. 139 at 17.] Defendants focus on where the desire to purchase the policies originated, the location of the party paying the premiums, and where the policies were kept. [Docket No. 137 at 23; Docket No. 106-1 at 17.] These contacts are summarized below.

9

|  | National Union Policies | USFG Policies |
|---|---|---|
| Location where the policies were underwritten. | New York [Docket No. 89 at 12, 21.] | Pennsylvania or Connecticut [Docket No. 139 at 8–9.] |
| Location where the desire to purchase the policies originated. | Michigan [Docket No. 94 at 6] | Michigan [Docket No. 106-1 at 17.] |
| Location of the party paying the premiums. | Michigan [Docket No. 138 at 8.] | Michigan [Docket No. 139 at 10.] |
| Location where the premiums were received. | Illinois [Docket No. 138 at 8.] | New Jersey [Docket No. 139 at 10.] |
| Location where the policies were received and kept. | Michigan [Docket No. 137 at 24.] | Michigan [Docket No. 106-1 at 17.] |

With the exception of where the policies were received and kept, the parties do not dispute where these contacts occurred.  [*See* Docket No. 138 at 8.]  However, the parties dispute which of these contacts are relevant to determining the place of contracting.

In *Standard Fusee*, the Indiana Supreme Court explained that:

> although Insurers and brokers generally operated across state lines using various means of communication, all of SFC's written and verbal communication with the brokers originated from its Maryland headquarters. SFC's insurance procurement, review process, and decision making all occurred in Maryland. The policies were retained in and the premiums were paid from Maryland. Although there may be no conclusive evidence of where the contract was formed or the exact location of negotiation, the facts tend to favor Maryland.

*Standard Fusee*, 940 N.E.2d at 817; *see also CPC Intern., Inc. v. Northbrook Excess & Surplus Ins. Co.*, 739 F. Supp. 710, 712 (D. R.I. 1990) ("[T]he locations of the brokers present mere distractions because the brokers acted only as intermediaries between CPC and Northbrook.").

Focusing on the origin of communications, the place of procurement, review, and decision making, these factors all point to Michigan.  Visteon's global headquarters, department of risk management, and director of insurance were all located in Michigan.  [Docket No. 106-1

10

at 6; Docket No. 139 at 10.]  Moreover, the premiums were paid from Michigan.  [Docket No.

138 at 8; Docket No. 139 at 10.]  Although Defendants focus on where the premiums were

received and policies underwritten, the Indiana Supreme Court did not consider these factors in

*Standard Fusee*.  In any event, these factors do not implicate Indiana.  Ultimately, the place of

contracting is not entirely conclusive because several states are implicated but the overall

contacts related to the place of contracting favor Michigan over Indiana.  Therefore, this factor

weighs in favor of Michigan but is given little weight.

      D.     *Place of Negotiation*

      Plaintiffs also contend that the place of negotiation is indeterminate because the terms of

the policies were not negotiated, the National Union policies were underwritten in New York,

and the USFG policies were underwritten in Pennsylvania or Connecticut.  [Docket No. 139 at

17.]  National Union asserts that negotiations took place in Michigan because Visteon met with a

Michigan insurance agent, discussed the scope of coverage, requested certain policies, and

allowed the agent to dictate the policies' terms and bind Visteon to the agreement.  [Docket No.

137 at 23–24.]  USFG asserts that negotiations occurred in Michigan and the policies were

modified to include Michigan-based endorsements.  [Docket No. 106-1 at 17.]  In the Magistrate

Judge's view, the place of negotiation is inconclusive and should be given little weight.

      Despite Defendants' assertions that they negotiated the terms and scope of the policies,

these assertions are unsupported.  Defendants fail to explain what terms were negotiated, the

circumstances surrounding the negotiations, or any other details to demonstrate that the parties

truly negotiated the policies' terms.  Moreover, determining the scope of the policies Visteon

desired is not negotiation.  Presumably, the insured merely selected the scope of coverage and

11

the insurer determined the premiums.  Plaintiffs have not provided any details to suggest

otherwise.  This lack of detail is particularly important because insurance companies usually

write the policies and "we buy their form[s] or we do not buy insurance."  *State Auto. Mut. Ins.*

*Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848–52 (Ind. 2012).

      Even assuming that some negotiation occurred, the location of negotiation is unclear.

Although Visteon's operations and communications originated from Michigan, the parties used

intermediaries in other states and the insurers who are not based in Michigan presumably

negotiated from their places of business.  *See Dana Corp.*, 690 N.E.2d at 293 ("The place of

negotiation . . . 'is of less importance when there is no one single place of negotiation as . . .

when the parties do not meet but rather conduct their negotiations from separate states by mail or

telephone.'").  Thus, the place of negotiation is inconclusive.

      *E.*     *Domicile and Similar Contacts*

      The final factor is the domicile, residence, nationality, place of incorporation, and place

of business of the parties.  [*Id.*]  National Union is incorporated in Pennsylvania and its principal

place of business is in New York.  [Docket No. 89 at 22; Docket No. 106-1 at 9.]  USFG is

incorporated in Connecticut and its principal place of business is in Connecticut.[4]  [Docket No.

106-1 at 8.]  Visteon Corporation is incorporated in Delaware and its principal place of business

is Michigan.  [Docket No. 89 at 22; Docket No. 106-1 at 2.]  Visteon LLC is a Delaware limited

liability company whose principal place of business is Michigan.  [Docket No. 106-1 at 2.]  From

2000 to 2002, Visteon's world headquarters were in Michigan.

      This factor is largely inconclusive and given little weight because the domicile, place of

---

[4]USFG was formally a subsidiary of a Minnesota company.  [Docket No. 106-1 at 8.]

incorporation, and place of business of the parties point to a variety of states. While this factor is given little weight, it still favors Michigan over Indiana because Visteon's principal place of business and world headquarters were located in Michigan and there are no Indiana contacts. *See* Restatement (Second) of Conflict of Laws §188 cmt. e ("[A] corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state.").

Although Heeb is an Indiana resident, Heeb was not a party to the insurance policies. The reason for considering domicile, residence, place of incorporation, and place of business is to determine which states' laws the parties to the insurance transaction contemplated would apply. *See Standard Fusee*, 940 N.E.2d at 814 ("Restatement (Second) section 188 . . . looks for the state with the 'most significant relationship to the transaction and the parties' . . . ."). Thus, Heeb's residence is not considered under this factor because he was not a party to the insurance transactions. Accordingly, this factor favors Michigan but is given little weight.

F.      *Summary of Contacts*

As discussed, the Court considers the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties to determine the applicable state law. *Standard Fusee*, 940 N.E.2d at 814. If the principal location of the insured risk—or in the terms of § 188, the location of the subject matter of the contract—can be determined, it is given more weight than the other factors. *Id.* at 816. Defendants' policies distinguish between domestic and foreign risks and although the USFG policies may carry little risk, there is some risk involved in all of the policies. Considering the

13

state with the most insured sites, the principal location of risk is Michigan, which has fourteen sites as compared to the three sites in Indiana. Because the principal location can be determined, this factor is given more weight than the other factors.

The place of contracting and the place of business factors—although largely inconclusive—tend to favor Michigan. Moreover, the Indiana Supreme Court found the location of a corporation's headquarters to be an important contact in confirming the principal location of the risk. *Standard Fusee*, 940 N.E.2d at 816 ("[T]he fact that the Maryland site is also SFC's headquarters suggests that it is the principal location of the insured risk."). The Court acknowledges that the place of performance favors Indiana, but this factor standing alone does not overcome the weight given to the principal location factor, especially when the place of contracting and the place of business factors favor Michigan. Therefore, the Magistrate Judge concludes that Michigan law applies to the policies.

## III.   Conclusion

For the reasons above, the Magistrate Judge recommends that Defendant National Union's amended motion for partial summary judgment [Docket No. 112] and Defendant USFG's motion for partial summary judgment [Docket No. 104] should be granted.[5]  Plaintiff Visteon's motion for partial summary judgment [Docket No. 88] should be denied.[6]

---

[5]National Union's motion for partial summary judgment [Docket No. 92] should be denied as moot.

[6]Heeb concurred with and joined in Visteon's motion [Docket No. 145] but did not file a separate summary judgment motion.

Accordingly, the Magistrate Judge recommends that Michigan law should be applied.  Any

objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in

accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days

after service shall constitute waiver of subsequent review absent a showing of good cause for

such failure.

Dated:  04/15/2013

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

15

Copies to:

Dean R. Brackenridge
FROST BROWN TODD LLC
dbrackenridge@fbtlaw.com

Nicholas D. Butovich
LITCHFIELD CAVO LLP
butovich@litchfieldcavo.com

Carrie Gibson Doehrmann
FROST BROWN TODD LLC
cdoehrmann@fbtlaw.com

Allison Wells Gritton
SPALDING & HILMES, PC
awgritton@spaldinglaw.net

Timothy F. Jacobs
CLAUSEN MILLER, PC
tjacobs@clausen.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

Brian Michael Reid
LITCHFIELD CAVO LLP
reid@litchfieldcavo.com

Todd G. Relue
PLEWS SHADLEY RACHER & BRAUN
trelue@psrb.com

Karen B. Scheidler
PLEWS SHADLEY RACHER & BRAUN
kscheidler@psrb.com

Katherine K. Schuman
PLEWS SHADLEY RACHER & BRAUN
kschuman@psrb.com

Rosemary Glass Spalding
SPALDING & HILMES PC
rgspalding@spaldinglaw.net

Mark W. Zimmerman
CLAUSEN MILLER PC
mzimmerman@clausen.com