UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VISTEON CORPORATION, | ) | |
| VISTEON SYSTEMS, LLC, | ) | |
| LOUIS  HEEB, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:11-cv-00200-RLY-TAB |
| NATIONAL UNION FIRE INS. CO. OF | ) | |
| PITTSBURGH, PA, | ) | |
| UNITED STATES FIDELITY & | ) | |
| GUARANTY CO., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE
BAKER'S REPORT AND RECOMMENDATION ON PARTIAL
MOTIONS FOR SUMMARY JUDGMENT**

**I.      Introduction**

This case concerns an insurance dispute that arose when Plaintiffs Visteon

Corporation's and Visteon Systems, LLC's (collectively "Visteon") Connersville, Indiana

plant was found to have soil and groundwater contamination.  Specifically,

trichloroethene ("TCE") was found at the plant and in the surrounding areas.  This

contamination caused millions of dollars in damages. Plaintiff Louis Heeb owns land

near the plant and also seeks damages arising from the contamination.

1

Defendants, National Union Fire Insurance Company of Pittsburgh and United States Fidelity & Guaranty Company ("USF&G"), served as insurance providers for Visteon at the time of the contamination. However, Defendants denied Visteon coverage under pollution exclusion provisions contained within the policies. Plaintiffs argue that these provisions are unenforceable under Indiana law. Defendants argue that Michigan law applies and, under Michigan law, such provisions are enforceable. For the purposes of the parties' partial motions for summary judgment, the limited question before the court is whether Indiana or Michigan law governs the policies. For the reasons set forth below, the Magistrate Judge's Report and Recommendation is approved and adopted.

## II.    Standard of Review

The Magistrate Judge's Report and Recommendation concerns a dispositive motion. Accordingly, the district court reviews the Report and Recommendation *de novo*. *See Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992) (citing 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b)). *De novo* review requires the court to re-examine the evidence with fresh eyes and make "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984).

## III.   Discussion

The Seventh Circuit has noted that before a court engages in a choice of law analysis, it must first determine whether a conflict of law actually exists. *In re Griffin Trading Co.*, 683 F.3d 819, 824 (7th Cir. 2012) (citing *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007)). In the present case, the court finds, and the parties agree, that Indiana and Michigan law are in direct conflict with respect to the

2

enforceability of pollution exclusion provisions in contracts. In fact, the language found in the policies at issue in this case is virtually identical to language that the Supreme Courts of both Indiana and Michigan have previously considered. Yet, the Courts' holdings stand in direct opposition to one another. The Indiana Supreme Court recently held that the definition of "pollutant" contained within a pollution exclusion clause was overly broad and ambiguous. *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 850 (Ind. 2012). Therefore, the Court construed the language against the insurer and in favor of coverage for the insured. *Id.* at 852. In contrast, the Michigan Supreme Court examined what can practically be considered the same language and found that it was neither patently nor latently ambiguous. *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 203 (Mich. 2005). The Court remanded the case with instructions to grant summary judgment for the insurer. *Id.* at 208.

After finding that a choice of law inquiry is indeed required, this court must proceed with its analysis by adhering to the choice of law doctrine adopted by the Indiana Supreme Court: "A district court sitting in diversity must apply the choice of law principles of the forum state (in this case Indiana) to determine which state's substantive law governs the proceeding." *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013) (citing *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006); *French v. Beatrice Foods Co.*, 854 F.2d 964, 966 (7th Cir. 1988)).

When faced with a choice of law issue in which an insurance policy covers multiple risks in multiple states, Indiana utilizes the "uniform-contract-interpretation" approach, which directs the court to apply the law of one state to the entire contract.

3

*Nat'l Union Fire Ins. Co. v. Std. Fusee Corp.*, 940 N.E.2d 810, 813 (Ind. 2010).  The

"uniform-contract-interpretation" comports most closely with the "most intimate contact"

test.  *Id.*  In *Standard Fusee*, the Indiana Supreme Court noted that the test "looks for the

state with the 'most significant relationship to the transaction and the parties.'"  *Id.* at

815.  The "most intimate contact" test employed by Indiana courts is consistent with the

approach taken by RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971).  *Id.*  Section

188 of the Restatement notes that in the absence of a choice of law provision in the

contracts or some other agreement by the parties (as is the case in the matter presently

before the court), the court should determine the law that governs the issue by

considering five contacts:

> (1) the place of contracting
>
> (2) the place of negotiation of the contract
>
> (3) the place of performance
>
> (4) the location of the subject matter of the contract
>
> (5) the domicile, residence, nationality, place of incorporation and place of
> business of the parties.

RESTATEMENT (SECOND) § 188.  Whereas Section 188 notes that these contacts

may be "evaluated according to their relative importance," there is no need to

adhere to the order provided above.  *Id.*  Each of the contacts will be addressed in

the order they are addressed by the parties.

### A.      Principal Location of the Insured Risk (The Location of the Subject Matter of the Contract)

According to the *Standard Fusee* Court, "In insurance contract cases, we first attempt to determine the principal location of the insured risk.  If the principal location of the insured risk can be determined, it is given more weight than other factors.  If no such location exists, we continue our analysis of the most intimate contacts."  940 N.E.2d at 816.  The principal location of the insured risk can be determined by identifying "the state having more insured sites than any other."  *Id.  See also Employers Ins. Co. v. Coachmen Industries., Inc.*, 838 N.E.2d 1172, 1181 (Ind. Ct. App. 2005) ("[W]hile Coachmen's risks were scattered throughout the country because of its numerous subsidiaries, Indiana is the principal location of the insured risk because Indiana is, and has always been, the state with the largest number of insured sites."); *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*,716 N.E.2d 1015, 1025 (Ind. Ct. App. 1999) ("[A]lthough there was potential liability in both Indiana and New York, Indiana was the location of more sites."); *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 933 (Ind. Ct. App. 1999) (the Court found that Indiana was the principal location of the insured risk because four out of the seven sites were located in Indiana); *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 294 (Ind. Ct. App. 1997) ("Although Dana's sites are scattered to a degree, they are nonetheless principally located in Indiana."). Importantly, Indiana courts have not held that a state must lay claim to a majority of the insured sites in order to be the principal location of the insured risk; a plurality is enough.

*See Coachmen*, 838 N.E.2d at 1181.  The analysis for this factor is largely objective and based upon a simple count of insured sites.

In its briefing, Visteon offers two primary arguments concerning the principal location of the insured risk.  First, Visteon contends that this factor is inconclusive because Visteon's operations (and therefore its risk) are spread throughout the world. Second, Visteon argues that a specific risk analysis actually implicates Indiana as the principal location of the insured risk.

### 1.    Global and Domestic Risk

Visteon first contends that the principal location of the insured risk is inconclusive because it is a global entity.  Indeed, during the insured period, Visteon had fourteen sites in Mexico, fourteen in Michigan, three in Indiana, three in Canada, and two or less in other states and countries.  Visteon cites to two Third Circuit cases that support the assertion that when the insured's risk is spread across several states or the world, the principal location of the insured risk is inconclusive and given little weight in a choice of law analysis.  *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007); *Compagnie des Bauxites de Guinee v. Argonaut-Mw. Ins. Co.*, 880 F.2d 685, 690 (3d Cir. 1989).  Putting aside the fact that these decisions come out of a different jurisdiction, it is unclear whether the facts in these two cases are similar to the case presently before the court.  Noticeably absent from the *Hammersmith* and *Compagnie* Courts' analyses are any details whatsoever regarding the numerical breakdown of insured sites for each state and country.  Thus, the *Hammersmith* and *Compagnie* Courts might have faced scenarios

that are quite different from Visteon's operations.  Quite simply, it is unclear how the Courts came to the conclusions that Visteon uses in support of its argument.

The Magistrate Judge dismisses Visteon's argument about the inconclusiveness of this factor by drawing a distinction between global and domestic risk.  The Report essentially notes that global and domestic risks are insured separately under the National Union policy, so Visteon's international sites should not be considered in the choice of law analysis.  (Report at 4).  There are no Indiana cases that are directly on point regarding this issue, so it is unclear whether the court should draw a distinction between foreign and domestic sites when determining the principal location of the insured risk.  However, the court need not determine whether such a distinction should be drawn in this case because the same state is implicated regardless of whether Visteon's domestic sites are considered alone or in conjunction with its foreign sites.  The slight difference in analysis does not actually change the ultimate result.

If the court only considers Visteon's domestic sites, Michigan has fourteen and thus, is objectively the "the state having more insured sites than any other."  *Standard Fusee*, 940 N.E.2d at 816.  If the court considers foreign sites as well, Mexico also has fourteen.  Of Michigan and Mexico, the court still finds Michigan to be the principal location of the insured risk for several reasons.  First, Visteon's headquarters are located in Michigan.  *See id.* (the *Standard Fusee* Court concluded that even though the number of sites in Maryland and Indiana was the same, "the fact that the Maryland site is also [the plaintiff's] headquarters suggests that it is the principal location of the insured risk.").  Second, Visteon's policy with USF&G only provides coverage to Visteon for

7

sites located in the United States.  In other words, the Mexico sites are not insured by

USF&G.  Lastly, National Union and USF&G provide ample evidence to show that the

majority, or at least a plurality, of Visteon's overall operations occur in Michigan, not

Mexico.  As directed by the *Standard Fusee* Court, this factor is given more significance

than the other Section 188 factors.  940 N.E.2d at 816.

### 2.      Specific Risk Analysis

Visteon argues that if a single location of general risk cannot be determined, this

court should engage in a specific risk analysis.  According to Visteon, the court should

narrowly consider just the risk of TCE contamination and then determine if the evidence

shows that the principal location of the insured risk points to a single state.  As both

National Union and USF&G explain, this type of analysis is contrary to Indiana law.

In *Standard Fusee*, the Court explicitly rejected a site-specific approach for

determining the principal location of the insured risk in favor of the "uniform-contract-

interpretation" approach.  940 N.E.2d at 815.  The Court reasoned that the application of

the site-specific approach would require a court to examine each site separately and

potentially apply a different state's law to each one.  This would force the court to engage

in dépeçage, or "the process of analyzing different issues within the same case separately

under the laws of different states."  *Simon v. United States*, 805 N.E.2d 798, 801 (Ind.

2004) (*quoted in Standard Fusee*, 940 N.E.2d at 814-15).  Visteon's specific risk

approach is similar to the site-specific approach, and would give rise to the same

problems.  Because the Indiana Supreme Court has unequivocally refused to allow for

dépeçage or the type of analysis Visteon recommends, this court still finds that Michigan is the principal location of the insured risk.

### B.     The Place of Performance

Indiana courts have consistently defined the place of performance as the location where the insurance funds will be put to use.  *See Standard Fusee*, 940 N.E.2d at 817; *Coachmen*, 838 N.E.2d at 1180; *Dana*, 690 N.E.2d at 293; *Recticel*, 716 N.E.2d at 1024; *Summit*, 715 N.E.2d at 932.  Importantly though, the comments to the Restatement explain that this factor "can bear little weight in the choice of the applicable law when (1) at the time of contracting [the place of performance] is either uncertain or unknown . . . ."  RESTATEMENT (SECOND) § 188 cmt. e.

In this case, it is undisputed that the insurance funds will be put to use in Indiana, as that is where Visteon's Connersville site is located.  However, the parties disagree as to how much weight this factor should have in the court's choice of law analysis.  Visteon argues that this factor should be controlling and cites the following language from this court in *Reliance Ins. Co. v. Raybestos Prods. Co.* as justification: "In a situation like this -- where the contract contains no choice of law provision, the parties are from different states, and the parties have negotiated without meeting in person -- the place of performance is usually given controlling weight."  2000 U.S. Dist. LEXIS 23137, at *17-18 (S.D. Ind. Jan. 19, 2000).  However, almost immediately following that quoted language, this court noted that, in that case, "the location of the insured risk [was] entirely in

9

Indiana." *Id.* at *18.  That cannot be said of the matter before the court.  As has already been discussed, Visteon has insured sites spread throughout the world. Furthermore, it is unclear from the opinion whether the other Section 188 factors in *Raybestos* were conclusive.

The comments to the Restatement direct this court to give the place of performance little weight because "at the time of contracting" the location where the insurance funds would be put to use is "uncertain or unknown." RESTATEMENT (SECOND) § 188 cmt. e.  While it is now obvious that the funds would be put to use in Indiana, the evidence does not suggest that this was apparent at the time of contracting.  In its Objection, Visteon argues that there is evidence that suggests Defendants knew funds would be needed in Indiana, but this argument is unpersuasive.  While it may be true that further discovery into this matter was denied, the evidence Visteon is able to present on this matter does not support its conclusion.  Consequently, the place of performance points to Indiana, but is given little weight.

## C.      The Place of Contracting

The place of contracting is defined as "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect."  RESTATEMENT (SECOND) § 188 cmt. e.  Essentially, the court must determine the state in which Visteon manifested assent to the insurance policies with Defendants.  Seemingly simple on its face, Indiana courts have regularly struggled to find that this contact conclusively points to a single state.

10

*Coachmen*, 838 N.E.2d at 1179 (although evidence suggested that Indiana was the place of contracting, the Court could not draw a conclusive determination); *Recticel*, 716 N.E.2d at 1024 (place of contracting implicated two states and was thus found to be "not determinative"); *Summit*, 715 N.E.2d at 932 (evidence was inconclusive or lacking with regard to where the place of contracting took place); *Dana*, 690 N.E.2d at 292-93 (place of contracting was indeterminate because the countersignatures were primarily those of the insurer's authorized agent, who was located in a different state from the insurer's primary place of business); *but cf. Standard Fusee*, 940 N.E.2d at 817 (the facts regarding the place of contracting "slightly favored" Maryland).

National Union and USF&G argue that the place of contracting is Michigan. Defendants focus their analysis on where certain policies were delivered, purchased, and invoiced—all of which implicates Michigan. Visteon contends that the factor is inconclusive by demonstrating that certain policies were delivered in New York and premiums were received by National Union in Illinois. Consequently, under Visteon's analysis, several states are implicated by this factor.

This court ultimately draws a similar conclusion to that of the *Coachmen* Court. While the evidence used to show that Michigan is the place of contracting is strong, Visteon's analysis prevents the court from conclusively pointing to Michigan as being "the place where occurred the last act necessary . . . to give the

contract binding effect."  RESTATEMENT (SECOND) § 188 cmt. e.  Thus, this factor

is inconclusive.

>    **D.    The Place of Negotiation of the Contract**

This factor asks the court to determine where the parties negotiated the

terms of the insurance policies at issue in this case.  Importantly, the word

"negotiation" implies a back-and-forth discussion, in which both parties make

concessions and demands.  The final contract is a product of the compromises

made during those discussions.  This understanding of negotiation is difficult to

apply to insurance contracts.  As the Indiana Court of Appeals has recognized,

insurance contracts do not typically involve negotiation.  *American Economy Ins.

Co. v. Liggett*, 426 N.E.2d 136, 142 (Ind. Ct. App. 1981).  Finding insurance

contracts to be contracts of adhesion, the Court declared, "The insurance

companies write the policies; we buy their form or we do not buy insurance."  *Id.*

While National Union and USF&G contend that Michigan is the place of

negotiation, their contention is unpersuasive.  This court is inclined to agree with

Visteon: there is simply no evidence to suggest that any true negotiation took

place with respect to the policies at issue in this case.  Thus, the place of

negotiation is inconclusive.

>    **E.    The Domicile, Residence, Nationality, Place of Incorporation and Place
>    of Business of the Parties**

The final factor in the court's choice of law analysis seeks to identify the

"places of enduring relationship to the parties."  RESTATEMENT (SECOND) § 188

cmt. e.  The following are facts not in dispute: National Union is incorporated in Pennsylvania and its principal place of business is in New York; USF&G is incorporated in Connecticut and its principal place of business is in Connecticut; Visteon Corporation is incorporated in Delaware and its principal place of business is in Michigan; Visteon Systems, LLC is a Delaware limited liability company and its principal place of business is in Michigan.  An objective count of the states implicated reveals that this factor points to five different states.  Notably, Connecticut, Delaware, and Michigan are each implicated twice.  The court does not end its inquiry there though.

The comments to the Restatement direct the court to give greater weight to each party's principal place of business: "[A] corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state."  RESTATEMENT (SECOND) § 188 cmt. e.  Of the three states that are implicated twice, Connecticut and Michigan are both principal places of business.

The *Standard Fusee* Court's analysis on this factor rendered similar results, and the Court ultimately determined that the factor pointed to Maryland because: (1) the insured's headquarters was located there when it procured the policies and (2) the other state being considered in the choice of law inquiry (Indiana) was not implicated at all.  940 N.E.2d at 816.  Following the reasoning of the *Standard Fusee* Court, this court finds that this factor points to Michigan because: (1)

13

Visteon's principal place of business and world headquarters were located in Michigan when it procured the policies and (2) the other state being considered in the choice of law analysis (Indiana) is not implicated at all.  However, because this factor does implicate several other states, the court will give it little weight.

In its Objection, Visteon contends that this contact is a "three-way split" between Michigan, New York, and Connecticut and, therefore, inconclusive.  It is important to note that Visteon arrives at this conclusion by considering only the principal places of business of the parties and also merging Visteon Corporation and Visteon Systems, LLC into one entity, despite the fact that they are two separate plaintiffs.  However, if only the principal places of business are considered and each party is properly represented, the implicated states would be New York, Connecticut, Michigan, and Michigan.  Therefore, the factor would conclusively point to Michigan; there would not be a "three-way split" as Visteon claims.  Regardless, the court cannot rely on Visteon's analysis because Section 188 calls for the domicile, residence, nationality, place of incorporation *and* place of business of the parties.  While the comments to the Restatement do state that a corporation's principal place of business is more important than its place of incorporation, it does not state the place of incorporation should not be considered whatsoever.

Visteon also argues in its Objection that Mr. Heeb's presence in the case should be considered in the analysis for this factor because Mr. Heeb has a legally recognizable interest under the Indiana Declaratory Judgment Act.  While it may

14

be true that Mr. Heeb has a viable tort claim against Defendants, that claim does

not require this court to consider Mr. Heeb's domicile in its choice of law analysis.

Quite simply, this is an action for declaratory judgment on insurance coverage.

Mr. Heeb was not a party to the insurance policies at issue in this case.

Consequently, Mr. Heeb's presence should not be accounted for under this

contact.  The United States District Court for the Northern District of Indiana

recently held the same in a similar case.  *Ill. Nat'l Ins. Co. v. Temian*, 779 F. Supp.

2d 921, 925 (N.D. Ind. 2011).

   In summary, two of the Section 188 factors (place of contracting and place of

negotiation) are inconclusive, two (principal location of the insured risk and place of

domicile/headquarters) implicate Michigan, and one (place of performance) implicates

Indiana.  Regardless of whether this court objectively bases its determination on the fact

that Michigan is implicated twice and Indiana is only implicated once, or the court

subjectively considers how each factor should be weighted, the end result is the same:

Michigan law governs the action.

**IV.     Conclusion**

   For the foregoing reasons, the court approves and adopts the Magistrate Judge's

Report and Recommendation.  National Union's amended motion for partial summary

judgment (Docket # 112) and USF&G's motion for partial summary judgment (Docket #

104) are **GRANTED**.[1]  Visteon's motion for partial summary judgment (Docket # 88) is

**DENIED**.[2]


**SO ORDERED** this 22nd day July 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

---

[1] National Union's original motion for partial summary judgment (Docket # 92) is **DENIED AS MOOT**.

[2] Visteon's Request for Oral Argument (Docket # 161) and Renewed Request for Oral Argument (Docket # 181) exclusively pertain to the parties' summary judgment motions on the choice of law issue, and are therefore **DENIED AS MOOT**.